IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
May 25, 2016 Session[1]

**KIM HARDY**
v.
**TOURNAMENT PLAYERS CLUB AT SOUTHWIND, INC.,
D/B/A "TPC SOUTHWIND," ET AL.**

**Appeal by Permission from the Court of Appeals
Circuit Court for Shelby County
No. CT00120114    Donna M. Fields, Judge**
_____

**No. W2014-02286-SC-R11-CV – Filed March 8, 2017**
_____


We granted this interlocutory appeal to address whether an employee may assert a private right of action against her employer under Tennessee Code Annotated section 50-2-107, referred to as the Tennessee Tip Statute, for the employer's failure to properly pay tips, gratuities, and service charges.  The trial court granted the defendant employers' motion to dismiss the plaintiff employee's claim pursuant to section 50-2-107 for failure to state a claim, on the ground that there was no private right of action under the statute. In a divided opinion, the Court of Appeals reversed, based in part on a 1998 Court of Appeals decision recognizing a private cause of action under the Tip Statute.  On appeal, we find that the 1998 Court of Appeals decision is inconsistent in part with subsequent Tennessee Supreme Court jurisprudence on implying a private right of action under a statute.  For this reason, we decline to apply the doctrine of legislative inaction to presume that the legislature knew of the 1998 Court of Appeals' holding, recognizing a private right of action under the statute, and acquiesced in it.  We hold instead that the employee has no private right of action under section 50-2-107 and overrule the 1998 Court of Appeals decision to the extent that it is inconsistent with our holding herein. Accordingly, we reverse the judgment of the Court of Appeals and affirm the trial court's judgment granting the motion to dismiss the employee's cause of action under section 50-2-107 for failure to state a claim.

---

[1] We heard oral argument in this case on May 25, 2016, at Tennessee Technological University in Cookeville, Tennessee, as part of this Court's S.C.A.L.E.S. (Supreme Court Advancing Legal Education for Students) project.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Reversed; Judgment of Circuit Court Affirmed; Case Remanded**

HOLLY KIRBY, J., delivered the opinion of the court, in which JEFFREY S. BIVINS, C.J., and CORNELIA A. CLARK, SHARON G. LEE, and ROGER A. PAGE, JJ., joined.

Todd P. Photopulos and Diana M. Comes, Memphis, Tennessee, for the appellants, Tournament Players Club at Southwind, Inc., PGA Tour Golf Course Properties, Inc., and PGA Tour, Inc.

Bruce S. Kramer, Amy E. Strickland, and Patrick H. Morris, Memphis, Tennessee, for the appellee, Kim Hardy.

# OPINION

## FACTUAL AND PROCEDURAL BACKGROUND

This is an interlocutory appeal from the trial court's grant of a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12.02(6) of the Tennessee Rules of Civil Procedure.[2] In reviewing a dismissal for failure to state a claim, the appellate court must take the allegations in the complaint as true. *First Cmty. Bank, N.A. v. First Tenn. Bank, N.A.*, 489 S.W.3d 369, 382 (Tenn. 2015), *cert. denied sub nom. Fitch Ratings, Inc. v. First Cmty. Bank, N.A.*, 136 S. Ct. 2511 (U.S. June 27, 2016). Accordingly, our recitation of the facts is taken from the complaint filed in this case and, for purposes of this appeal, we accept them as true.

---

[2] Rule 12.02 of the Tennessee Rules of Civil Procedure provides in pertinent part that:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion in writing: . . . (6) failure to state a claim upon which relief can be granted . . . . A motion making any of these defenses shall be made before pleading if a further pleading is permitted. No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion. If a pleading sets forth a claim for relief to which the adverse party is not required to serve a responsive pleading, the adverse party may assert at the trial any defense in law or fact to the claim for relief.

Tenn. R. Civ. P. 12.02

Defendant Tournament Players Club at Southwind, Inc. ("TPC Southwind"), hired plaintiff Kim Hardy as a food server/bartender on November 14, 2004. She eventually became a Service Captain/Lead Server. TPC Southwind is a private club with dining and banquet facilities.

TPC Southwind customarily adds a mandatory service charge to every bill at its bars and restaurants. In addition, TPC Southwind patrons may also pay separate gratuities, or "add-on tips," to the servers and bartenders who serve them. TPC Southwind placed all of the mandatory service charges in a pool. It disbursed a portion of the service charges to Ms. Hardy and other food-serving employees in their paychecks, along with their hourly wages. The add-on tips were not disbursed immediately; they were also included in the employees' paychecks.

According to Ms. Hardy, instead of paying the service charges and add-on tips to the employees who rendered the services that gave rise to them, as required under Tennessee Code Annotated section 50-2-107 (the "Tip Statute"),[3] TPC Southwind distributed a portion of the monies to "non-tipped" employees, that is, employees who did not render the services that gave rise to the service charges and add-on tips. These non-tipped employees included kitchen staff who did not serve the patrons, and they even included salaried management. In this way, Ms. Hardy alleged, she and the other food-serving employees did not receive their full portion of the service charge/add-on tip pool.

On March 18, 2014, Ms. Hardy filed this lawsuit against Defendants TPC Southwind, PGA Tour, Inc., and PGA Tour Golf Course Properties, Inc. (collectively, "Defendants"). Ms. Hardy filed it as a putative class action on behalf of past and present employees of the Defendants whose employment income was derived from gratuities,

---

[3] The Tip Statute, section 50-2-107, provides in part:

(a)(1) If a business, including a private club, lounge, bar or restaurant, includes on the bill presented to and paid by a customer, member or patron an automatic percentage or specific dollar amount denominated as a service charge, tip, gratuity, or otherwise, which amount is customarily assumed to be intended for the employee or employees who have served the customer, member or patron, that amount shall be paid over to or distributed among the employee or employees who have rendered that service. The payment shall be made at the close of business on the day the amount is received or at the time the employee is regularly paid, or, in the case of a bill for which credit is extended to a customer, member or patron, payment shall be made at the close of business on the day the amount is collected or on the first day the employee is regularly paid occurring after the amount is collected.

Tenn. Code Ann. § 50-2-107(a)(1) (2012).

tips, or service charges. In the lawsuit, Ms. Hardy alleged that the Defendants' failure to pay her and other similarly situated employees all of the tips, gratuities, and/or service charges they earned, and the practice of paying a portion of them to non-tipped employees, violated the Tip Statute. Ms. Hardy also asserted breach of contract, conversion, fraud and negligent misrepresentation in procuring employment in violation of the Tip Statute, aiding and abetting, and civil conspiracy. Ms. Hardy sought class-action certification and compensatory and punitive damages on behalf of Ms. Hardy and other similarly situated persons.

In April 2014, the Defendants filed a motion to dismiss for failure to state a claim. Among other things, the Defendants argued that Tennessee Code Annotated section 50-2-101, another statute in the so-called "Tennessee Wage Regulation Act," does not afford a private remedy. They pointed to a 2013 amendment to section 50-2-101 that omitted prior language that referred to a private right of action arising out of section 50-2-101.[4] The Defendants contended that the 2013 amendment to section 50-2-101 was retroactive, so Ms. Hardy had no private right of action under section 50-2-107 in the instant case.

In response, Ms. Hardy argued first that the 2013 amendment to section 50-2-101 applied only to that section and not to section 50-2-107, so it would not affect her lawsuit. Second, Ms. Hardy cited a 1998 Court of Appeals opinion, *Owens v. University Club of Memphis*, which found that a private right of action exists under section 50-2-107, the Tip Statute. No. 02A01-9705-CV-00103, 1998 WL 719516, at *11 (Tenn. Ct. App. Oct. 15, 1998).[5]

In October 2014, the trial court issued an order holding that a private right of action does not exist under section 50-1-107 and dismissing Ms. Hardy's claims under the Tip Statute. Citing *Brown v. Tenn. Title Loans, Inc.*, 328 S.W.3d 850, 855 (Tenn. 2010), the trial court noted that section 50-2-107 does not contain express language granting a private right of action, and it held that Ms. Hardy had not carried her burden to show legislative intent to imply a private right of action. In the spirit of judicial economy, the trial court refrained from addressing the arguments regarding the plaintiff's remaining claims and granted Ms. Hardy's request for permission to seek an interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure.

The Court of Appeals granted Ms. Hardy's Rule 9 application for permission to appeal. The issue presented was "whether Tennessee Code Annotated § 50-2-107

---

[4] As discussed further below, the 2013 amendment to section 50-1-101 deleted the following text: "The amount agreed upon between employer and employee, or employee representative, shall constitute a basis for litigation in civil cases."

[5] *Owens* was authored by the undersigned while a member of the Court of Appeals.

provides a private right of action notwithstanding the 2013 amendment to § 50-2-101 providing for enforcement of that section by the Department of Labor and Workforce Development." *Hardy v. Tournament Players Club at Southwind, Inc.*, No. W2014-02286-COA-R9-CV, 2015 WL 4042490, at *2 (Tenn. Ct. App. July 2, 2015), *perm. app. granted* (Dec. 9, 2015).

In a divided opinion, the Court of Appeals found an implied private right of action. *Id.* at *14-16. Citing the 1998 *Owens* opinion, the majority observed: "This Court's holding in *Owens* has not been overruled; the General Assembly did not amend section 107 when it amended section 101 in 2013; and the General Assembly amended section 107 in 2012 and did not legislatively overrule our holding in *Owens*." *Id.* at *6. On this basis, the Court of Appeals reversed the trial court's grant of the motion to dismiss the claims under section 50-2-107. *Id.* at *16.

Judge Brandon Gibson filed a dissent, stating: "I do not believe this Court's decision in *Owens* can be reconciled with the Tennessee Supreme Court's analysis in *Brown v. Tennessee. Title Loans, Inc.*, especially considering the lack of any discussion of legislative intent in *Owens*." *Id.* (Gibson, J., dissenting). In line with the trial court, the dissent urged that the proper outcome was to "adopt the reasoning utilized by the Tennessee Supreme Court in *Brown* and determine that Tennessee Code Annotated section 50-2-107 does not provide a private cause of action." *Id.* The dissent noted that the only remedy provided in the statute was a criminal penalty, and it asserted that the court's role was to enforce that remedy, not to create a new one. *Id.* We granted the Defendants' application for permission to appeal to this Court.

## ISSUES ON APPEAL AND STANDARD OF REVIEW

The issue certified for interlocutory appeal is:

[W]hether Tennessee Code Annotated § 50-2-107 provides a private right of action notwithstanding the 2013 amendment to § 50-2-101 providing for enforcement of that section by the Department of Labor and Workforce Development.

In addition, the Defendants raise two issues as embraced[6] within the certified issue:

---

[6] For the first time, in her brief before this Court, Ms. Hardy urges this Court to consider the rule that, when "a common law right exists, and a statutory remedy is subsequently created, the statutory remedy is cumulative unless expressly stated otherwise." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 899 (Tenn. 1992). Ms. Hardy contends that a common-law right for workers to receive wages earned dates back to Biblical times, and asserts that section 50-2-107 was created subsequent to the common law

- 5 -

1. Whether the majority opinion of the Court of Appeals erred in relying on the standard contained within *Owens v. University Club of Memphis*, No. 02A01-9705-CV-00103, 1998 WL 719516 (Tenn. Ct. App. Oct. 15, 1998), an unpublished opinion, to find a private right of action under Tenn. Code Ann. § 50-2-107?

2. Whether, under the correct standard contained within *Premium Fin. Corp. v. Crump Ins. Servs.*, 978 S.W.2d 91 (Tenn. 1998), and *Brown v. Tenn. Title Loans, Inc.*, 328 S.W.3d 850 (Tenn. 2010), a private right of action exists under Tenn. Code Ann. § 50-2-107?

As we indicated above, this interlocutory appeal arises from the trial court's grant of the Defendants' motion to dismiss the complaint for failure to state a claim. Filed pursuant to Rule 12.02(6) of the Tennessee Rules of Civil Procedure, this motion tests the legal sufficiency of the plaintiff's complaint. *See Mortg. Elec. Registration Sys., Inc. v. Ditto*, 488 S.W.3d 265, 275 (Tenn. 2015) (citing *Harman v. Univ. of Tenn.*, 353 S.W.3d 734, 736 (Tenn. 2011)).

Determining whether a statute creates a private right of action requires statutory construction. We review the lower courts' interpretation of statutes *de novo*, with no presumption of correctness. *See Am. Heritage Apartments, Inc. v. Hamilton Cnty. Water & Wastewater Treatment Auth.*, 494 S.W.3d 31, 40 (Tenn. 2016) (citing *Hayes v. Gibson Cnty.*, 288 S.W.3d 334, 337 (Tenn. 2009)); *see also Brown*, 328 S.W.3d at 855 (citing Tenn. R. App. P. 13(d); *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997)).

## ANALYSIS

"A private right of action is the right of an individual to bring suit to remedy or prevent an injury that results from another party's actual or threatened violation of a legal requirement."[7] *Wisniewski v. Rodale, Inc.*, 510 F.3d 294, 296 (3d Cir. 2007). Some statutes provide a private remedy by their express terms; others define legal duties and "are silent about whether an individual may bring suit to enforce them." *Id.* at 297.

Tennessee's Tip Statute, Tennessee Code Annotated section 50-2-107, outlines how businesses like TPC Southwind are to handle payments from customers such as service charges, tips, and gratuities. It details the employer's duty to pay them to or

---

right and therefore the statutory remedy is cumulative because it is not expressly stated otherwise. This issue is not embraced within the issues certified for this interlocutory appeal and we decline to address it.

[7] The terms "private right of action" and "private cause of action" are used interchangeably. *See, e.g., Alexander v. Sandoval*, 532 U.S. 275, 284 (2001).

distribute them among the employees who served the customer. Tenn. Code Ann. § 50-2-107(a). Violation of the Tip Statute is deemed a Class C misdemeanor and each failure to pay an employee constitutes a separate offense. Tenn. Code Ann. § 50-2-107(b).

Ms. Hardy seeks to assert a private right of action against the Defendants based on the Tip Statute. It is undisputed that the Tip Statute does not expressly grant employees such as Ms. Hardy the right to file a lawsuit against an employer to enforce its provisions.[8] The question becomes, then, whether Ms. Hardy and the other putative class members have an implied private right of action under the Tip Statute.[9]

This Court addressed the implication of a private right of action in *Premium Fin. Corp. of Am. v. Crump Ins. Servs. Of Memphis, Inc.*, 978 S.W.2d 91, 93 (Tenn. 1998). In *Premium Finance*, the plaintiff premium finance company filed suit against the defendant insurance companies for damages resulting from the defendants' failure to return unearned premiums to the plaintiff after cancellation of underlying insurance contracts. *Id.* at 92. The plaintiff sought to assert a private cause of action against the insurers under a provision of the Premium Finance Company Act, Tennessee Code Annotated section 56-37-111. *Id.*

---

[8] One commentator described the usual assertion of an implied private right of action as follows:

> [T]he plaintiff institutes a civil action to prevent an injury or to recover damages, and he alleges that he is entitled to relief because of something contained in a legislative text. He says the defendant has acted or proposes to act in a manner contrary to the text. He relies upon the legislation even though the words of the text do not actually state that he has a right to bring an action of this kind, and here the defendant raises a defense. The defendant argues that the legislation does not support the plaintiff's claim because it does not state that the plaintiff is entitled to maintain an action upon it. The court must then decide the issue.

H. Miles Foy, III, *Some Reflections on Legislation, Adjudication, and Implied Private Actions in the State and Federal Courts*, 71 Cornell L. Rev. 501, 503 (1986).

[9] As discussed further below, the legislature enacted Tennessee Code Annotated section 1-3-119 to essentially proscribe the implication of a private right of action under a statute. Tenn. Code Ann. § 1-3-119 (a)-(b) (2014). However, subsection (c)(1) of the statute also provides: "Nothing in this section shall be construed in any way to impair the ability of a court to: (1) Recognize a private right of action that was recognized before July 1, 2012, by the courts of this state as arising under a statute, unless the statute is amended after July 1, 2012, to expressly bar the private right of action." As argued by Ms. Hardy and discussed below, the Court of Appeals recognized a private right of action under the Tip Statute in its 1998 decision in *Owens*, 1998 WL 719516, so section 1-3-119 is by its terms inapplicable in this case.

At the outset of its analysis, the Court in *Premium Finance* cautioned: "Where a right of action is dependent upon the provisions of a statute, our courts are not privileged to create such a right under the guise of liberal interpretation of the statute. Only the legislature has authority to create legal rights and interests." *Id.* at 93 (citing *Hogan v. McDaniel*, 319 S.W.2d 221, 223 (Tenn. 1958)). *Premium Finance* noted that the plaintiff bears the burden of establishing the existence of a private right of action. *Id.* (citing *Ergon, Inc. v. Amoco Oil Co.*, 966 F. Supp. 577, 585 (W.D. Tenn. 1997)). Where the statute does not expressly grant a private right of action, the Court directed courts to examine the statutory language to ascertain whether the legislature intended to create an implied right of action. *Id.* "To do this," *Premium Finance* held, "we consider whether the person asserting the cause of action is within the protection of the statute and is an intended beneficiary." *Id.* (citing *Carter v. Redmond*, 218 S.W. 217, 218 (1920); *Chattanooga Ry. & Light Co. v. Bettis*, 202 S.W. 70, 71 (1918)). It advised courts to look at the structure of the statute at issue and its legislative history. *Id.*

After examining the Premium Finance Company Act, the Court in *Premium Finance* found no private cause of action under section 56-37-111. *Id.* at 94. It added: "Where an act as a whole provides for governmental enforcement of its provisions, we will not casually engraft means of enforcement of one of those provisions unless such legislative intent is manifestly clear. We do not find such clear intention in the statute under review." *Id.*

The question of when a court may imply a private right of action under a statute was considered further in *Brown v. Tennessee Title Loans, Inc.* In *Brown*, the complaint alleged that the plaintiffs and putative class members were charged a prohibited "redemption premium fee" in violation of the Tennessee Title Pledge Act (TTPA). *Brown v. Tenn. Title Loans, Inc.*, 328 S.W.3d 850, 853 (Tenn. 2010) (citing Tenn. Code Ann. § 45-15-111(a) (2000)). The TTPA did not expressly provide for a private cause of action to enforce its terms, so the Court considered whether the plaintiffs had an implied private right of action under the Act against title pledge lenders who allegedly charged the prohibited fees. *Brown*, 328 S.W.3d at 854. The Court framed the issue as "whether the legislature otherwise indicated an intention to imply such a right in the statute." *Id.* at 855 (citing *Premium Fin. Corp.*, 978 S.W.2d at 93; *Reed v. Alamo Rent-A-Car, Inc.*, 4 S.W.3d 677, 689 (Tenn. Ct. App. 1999)).

To ascertain whether the legislature intended to imply a private cause of action, *Brown* stated, "[W]e look to the statutory structure and legislative history." *Id.* (citing *Premium Fin. Corp.*, 978 S.W.2d at 93; *Reed*, 4 S.W.3d at 689). *Brown* then outlined several factors for courts to use to discern legislative intent:

Appropriate factors to consider include (1) whether the party bringing the cause of action is an intended beneficiary within the protection of the statute, (2) whether there is any indication of legislative intent, express or implied, to create or deny the private right of action, and (3) whether implying such a remedy is consistent with the underlying purposes of the legislation.

*Id.* at 855-56 (citing *Ergon*, 966 F. Supp. at 583-84; *Buckner v. Carlton*, 623 S.W.2d 102, 105 (Tenn. Ct. App. 1981), *superseded by statute on other grounds*, Act of May 24, 1984, ch. 972, 1984 Tenn. Pub. Acts 1026, *as recognized in Lucas v. State*, 141 S.W.3d 121, 129, 137 (Tenn. Ct. App. 2004)). *Brown* emphasized, "The burden ultimately falls on the plaintiff to establish that a private right of action exists under the statute." *Brown*, 328 S.W.3d at 856 (internal citations omitted) (citing *Premium Fin. Corp.*, 978 S.W.2d at 93).

Applying this analysis, *Brown* first outlined the purpose and structure of the TTPA. *Id.* at 856. It noted that the TTPA provided for enforcement of its provisions through criminal and administrative penalties, including deeming a violation to be a class A misdemeanor and providing for suspension or revocation of the license of an offending title pledge lender. *Id.* at 857 (citations omitted). It reiterated the caution expressed in *Premium Finance* that, where a statute expressly provides for government enforcement, the Court will not add another means of enforcement unless legislative intent to do so is "manifestly clear." *Id.* (quoting *Premium Fin.*, 978 S.W.2d at 94).

After reviewing the statutory structure, the *Brown* Court then turned to "the three factors relevant to deciding whether the legislature intended to imply a private right of action . . . ." *Id.* at 858. Considering the first factor, it observed that both the language of the TTPA and its legislative history indicated that persons such as the plaintiff were "the intended beneficiaries" of the statute. *Id.* The Court quickly added that this fact alone, however, was not sufficient to imply a private right of action. *Id.*

To evaluate the second factor, whether there is any indication of legislative intent to create a private cause of action, *Brown* examined the legislative history of the TTPA. *Id.* It found nothing in the legislative history to suggest that, in addition to the criminal penalties, the legislature intended to allow private enforcement of the TTPA fee cap provisions. *Id.* In fact, the Court observed, since enactment of the TTPA, the legislature had repeatedly considered and refused to adopt an amendment to expressly create a private right of action. *Id.* at 858-59.

*Brown* then considered the last factor, whether an implied right of action would be consistent with the purposes of the TTPA. *Id.* at 859. It noted that the TTPA was designed to regulate the title pledge lending industry by government enforcement through

the use of criminal and administrative sanctions. *Id.* It quoted the following admonition by the United States Supreme Court: "[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Id.* at 860 (quoting *Transam. Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 19 (1979)).[10]

Considering the statutory structure, legislative history and the three enumerated factors, *Brown* concluded that the plaintiffs had not carried their burden of establishing that the legislature was "manifestly clear" in its intent to imply a private right of action under the TTPA. *Id.* at 863. Accordingly, the Court dismissed the plaintiffs' claim under the TTPA for failure to state a claim. *Id.* at 863.

We now apply the *Brown* analysis to the Tip Statute at issue in this case. First we examine the statutory language and structure, as well as its legislative history. *See id.* at 855. The Tip Statute provides:

> § 50-2-107. Service charges, tips or gratuities:
> (a)(1) If a business, including a private club, lounge, bar or restaurant, includes on the bill presented to and paid by a customer, member or patron an automatic percentage or specific dollar amount denominated as a service charge, tip, gratuity, or otherwise, which amount is customarily assumed to be intended for the employee or employees who have served the customer, member or patron, that amount shall be paid over to or distributed among the employee or employees who have rendered that service. The payment shall be made at the close of business on the day the amount is received or at the time the employee is regularly paid, or, in the case of a bill for which credit is extended to a customer, member or patron, payment shall be made

---

[10] To determine whether there is an implied private right of action under federal law, the United States Supreme Court in *Cort v. Ash* outlined factors similar to those set forth in this Court's decision in *Brown*. *See Cort v. Ash*, 422 U.S. 66, 78 (1975). Subsequently, however, the United States Supreme Court appeared to de-emphasize the *Cort v. Ash* factors, either indicating that *Cort* was effectively overruled or that legislative intent is the determinative factor. *See, e.g.*, *Thompson v. Thompson*, 484 U.S. 174, 189 (1988) (Scalia, J., concurring) (commenting that the Supreme Court effectively overruled the *Cort v. Ash* analysis in *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575-76 (1979) ("[T]he [*Cort*] court set forth four factors that it considered 'relevant' in determining whether a private remedy is implicit in a statute not expressly providing one. But the Court did not decide that each of these factors is entitled to equal weight.") and *Transamerica Mortg. Advisors, Inc.*, 444 U.S. at 15-16 ("[W]hat must ultimately be determined is whether Congress intended to create the private remedy asserted, as our recent decisions have made clear.")). *See also Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) ("The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. Statutory intent on this latter point is determinative.") (citing *Transamerica. Mortg. Advisors, Inc.*, 444 U.S. at 15).

at the close of business on the day the amount is collected or on the first day the employee is regularly paid occurring after the amount is collected.

(2) The payment shall not be reduced, docked or otherwise diminished to penalize an employee for any actions in connection with the employee's employment, if it is derived from a mandatory service charge or tip collected from customers, members or patrons.
* * *

(b) A violation of this section is a Class C misdemeanor. Each failure to pay an employee constitutes a separate offense.

Tenn. Code Ann. § 50-2-107(a)(1)-(2), (b).[11]  Thus, the Tip Statute details the employer's duty to distribute service charges, tips, and gratuities to the employees who rendered service to the customer, and it makes a violation a Class C misdemeanor.  Tenn. Code Ann. § 50-2-107.

The parties refer to the Tip Statute as part of the "Tennessee Wage Regulation Act" or "TWRA."  We note that, in *Brown*, the Court analyzed the Tennessee Title Pledge Act (TTPA), a comprehensive set of provisions regulating title pledge lenders, enacted by the General Assembly in response to a federal court decision.  *Brown*, 328 S.W.3d at 856.  Consequently, *Brown* examined the structure of the TTPA as a whole, the Act's overarching purpose and how the different sections worked together to serve that purpose.  *Id.* at 856-57.  *See also Premium Fin. Corp*, 978 S.W.2d at 94; *Petty v. Daimler/Chrysler Corp.*, 91 S.W.3d 765, 768 (Tenn. Ct. App. 2002), *perm. app. denied* (Sept. 9, 2002); *Reed*, 4 S.W.3d at 689.  In contrast, as observed by the Court of Appeals below, the so-called TWRA is "an amalgam of separate sections that were enacted for separate specific purposes . . . ."  *Hardy*, 2015 WL 4042490, at *15.  Indeed, the phrase "Tennessee Wage Regulation Act" is not found in any of the statutes of which it is supposedly comprised.[12]  The various provisions all generally fit under the umbrella of

---

[11] The Tip Statute expressly includes banquet facilities that are on the premises of a private club. *See* Tenn. Code Ann. §50-2-107(a)(3)(A).

[12] The phrase "Tennessee Wage Regulations Act," along with the acronym "TWRA," first appears in a 2009 federal district court case, *Abadeer v. Tyson Foods, Inc.*, No. 3:09-00125, 2009 WL 4110295, at *1 (M.D. Tenn. Nov. 25, 2009), *as modified* (Sept. 27, 2010).  *Abadeer* refers to Tennessee Code Annotated section 50-2-101 and the statutes that follow it, including section 50-2-107, as the "TWRA."  *Id.*; s*ee also Cannon v. Citicorp Credit Servs., Inc., (USA)*, No. 2:12-CV-88, 2014 WL 1267279, at *2 (E.D. Tenn. Mar. 26, 2014) (referring to "the Tennessee Wage Regulation Act ('TWRA'), Tenn. Code Ann. section 50-2-101 et seq.," and referencing *Abadeer*).  The name appears to derive from Chapter 2 entitled "Wage Regulations" of Title 50 ("Employer and Employee") of the Tennessee Code Annotated.  As discussed below, *Abadeer* prompted the Tennessee General Assembly to amend Tenn.

regulating employee wages and workplace conditions, but they were enacted at different times over a period of many years, with some sections dating back to the 1800s and others adopted as recently as 2013.[13]   We find no basis for viewing the purported "TWRA" as a comprehensive Act or regulatory scheme.   Consequently, in evaluating statutory language, structure and legislative history, we focus on the Tip Statute itself.

The Tip Statute, enacted in 1983, regulates how businesses such as restaurants, bars, lounges and private clubs must handle payments by customers, members or patrons that are "customarily assumed to be intended for the employee or employees who have served the customer, member or patron," such as tips, gratuities and service charges. Tenn. Code Ann. § 50-2-107(a)(1).   The statute specifies to whom such payments must be distributed, when and how they must be distributed, and it prohibits any deductions before distribution.   Tenn. Code Ann. § 50-2-107(a).   As we have observed, the statute contains no language creating a private right of action; the only penalty expressly provided in it is to make violation of the statute a Class C misdemeanor.   Tenn. Code Ann. § 50-2-107(b).   The parties do not dispute this.

When the bill creating the Tip Statute was filed in the Tennessee General Assembly, the Senate sponsor, Senator Ray Albright, explained why he proposed it:

> This bill came about by a condition where most of us go into a restaurant or into an eating place – . . .  when you pay with your credit cards, of course you leave your money on the table, the people waiting on you are going to get it.   In cases where you put 15% on your tip or it is added on automatically, . . . most people feel like this tip or gratuity or whatever it is called goes to those people that wait on them or are split between the ones that wait on them.   The truth of the matter is that the restaurant does not

---

Code Ann. section 50-2-101 in 2013; in the discussion of the 2013 amendment, some legislators referred to the "Wage Regulation Act."   However, in the 1983 legislative history of the Tip Statute, Tenn. Code Ann. section 50-2-107, we find no reference by legislators to either the "Tennessee Wage Regulation Act" or the "TWRA."   The Court of Appeals' 1998 decision in *Owens* did not refer to section 50-2-107 as part of the "Tennessee Wage Regulations."

[13] For example, current section 50-2-101 (addressing issues involving the amount of wages to be paid for the labor) derives from prior sections and amendments dating back to 1915.   Section 50-2-102's predecessor was enacted in 1899 (regarding payment of employees using coupons, scrip, store orders or other evidence of indebtedness); sections 50-2-103 (regarding manner of wage payment and break periods) and -104 (misrepresentation of wages) are derived from statutes first enacted in 1917; section 50-2-105 (assignments of income) originates from a 1903 act; and the provisions in section 50-2-106 (prohibition on requiring employees to trade at the company store) originated in 1887.   Sections 50-2-112 (wage requirements for local governments and private employers) and -113 (creation of the Tennessee Wage Protection Act) were enacted in 2013.

have any obligation to give this to them and is only obligated to pay them minimum wages, in which cases many do.

*Hearing on S.B. 1004 before the Senate*, 93rd Gen. Assemb. (Tenn. Mar. 30, 1983) (statements by Sen. Ray Albright).[14]  Responding to another legislator's objection that the bill would impede business owners' ability to run their businesses, Senator Albright said:

> But when they put it on there as a tip, the customer thinks it goes to the employees and I don't think it's the employers' right to be messing around with it, and this just assures that he can't, and he's started already doing it because of the IRS rulings, and I think this just puts it where it is supposed to be.  And if he wants to add – he said that we are tinkering around . . . , all they gotta do it add to the cost of our bill.  I don't think they ought to be taking it out as tips where we think it is going to the employees and using it in the restaurant.  I hope you vote for the bill.

*Id.* (statements by Sen. Ray Albright).

The House sponsor, Representative Bob Davis, gave a similar explanation of the reason he sponsored the legislation:

> As I understand it, many of those clubs, particularly in those that are waiting on large groups of people or in those places where they automatically include a gratuity of 15-18% as one that I know about, they are not distributing those funds to the people who wait on those tables.  They are doing whatever they please with them, and this is to accommodate that.

*Hearing on HB 1206 before House Lab. & Consumer Aff. Comm*, 93rd Gen. Assembly (Mar. 29, 1983) (statements by Rep. Bob Davis, Member, H. Comm. on Labor & Consumer Affairs).  Representative Davis later added, "[T]hat gratuity will be distributed among the people who provide the service to those particular people who pay for it." *Hearing on H.B. 1206 before the House*, 93rd Gen. Assemb. (Apr. 13, 1983) (statements by Rep. Bob Davis, Member, H. Comm. on Labor & Consumer Affairs).  The fiscal note for the proposed bill indicated that violations would be "punishable by a fine of not less than $50 and not more than $250." *See* Fiscal Note to Chief Clerks of Senate and House

---

[14] Audio recordings of the legislative proceedings regarding particular statutes may be obtained by contacting the Public Services section of the Tennessee State Library and Archives.  More information can be found at http://sos.tn.gov/products/tsla/legislative-history-recording.

from Donald L. Morton, Executive Director of the Fiscal Review Committee (March 18, 1983), H.R. 1206/ S. 1004.  In 1989, the statute was amended to provide that a violation would constitute a Class C misdemeanor, with each violation deemed a separate offense.[15]  1989 Tenn. Pub. Acts, ch. 591, § 113; *see* Tenn. Code Ann. §§ 40-35-110, -111.

We next consider the three factors in *Brown* used to discern legislative intent.  The first is whether the party bringing the cause of action, here Ms. Hardy, is "an intended beneficiary within the protection of the statute."  *Brown*, 328 S.W.3d at 855.  In this case, the Court of Appeals below found, "[T]he plaintiff in this case is a member of the class that section 107 was enacted to protect—tipped-employees."  *Hardy*, 2015 WL 4042490, at *14.  We agree.  The Tip Statute requires the regulated employers to pay tips, gratuities and service charges to the employees "who have served the customer, member or patron."  Tenn. Code Ann. § 50-2-107(a)(1).  It directs employers to do so in a timely manner and prohibits employers from reducing the amounts directed to the employees.  *Id.* § 50-2-107(a)(1)-(2).  Clearly Ms. Hardy falls within the class of persons intended to benefit from the protections of the Tip Statute.

However, "[t]he mere fact that the legislature enacted the [Tip Statute] to protect and benefit [employees such as Ms. Hardy] is not alone sufficient . . . to imply a private right of action."  *Brown*, 328 S.W.3d at 858 (citing *Ellison v. Cocke Cnty., Tenn.*, 63 F.3d 467, 470 (6th Cir. 1995); *Reed*, 4 S.W.3d at 689-90).  We go on to consider the remaining two factors.

The second *Brown* factor is "whether there is any indication of legislative intent, express or implied, to create or deny a private right of action."  *Id.* at 858.  As emphasized in both *Premium Finance* and *Brown*, Ms. Hardy bears the burden of showing legislative intent to create such a right.  *Brown*, 328 S.W.3d at 856, 858; *Premium Fin. Corp.*, 978 S.W.2d at 93 (citations omitted).

The United States Supreme Court has addressed how to discern legislative intent in the context of an implied private cause of action:

> Our focus on congressional intent does not mean that we require evidence that Members of Congress, in enacting the statute, actually had in mind the creation of a private cause of action.  The implied cause of action doctrine would be a virtual dead letter were it limited to correcting drafting errors

---

[15] In 2012, the legislature amended Tennessee Code Annotated section 50-2-107(a)(3) by designating the previously existing language as subdivision (A) and adding a new subsection excluding payments made by patrons at a guest ranch.

- 14 -

when Congress simply forgot to codify its evident intention to provide a cause of action. Rather, as an *implied* cause of action doctrine suggests, "the legislative history of a statute that does not expressly create or deny a private remedy will typically be equally silent or ambiguous on the question." *Cannon v. University of Chicago*, 441 U.S. 677, 694 (1979). We therefore have recognized that Congress' "intent may appear implicitly in the language or structure of the statute, or in the circumstances of its enactment." *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 18 (1979). The intent of Congress remains the ultimate issue, however, and "unless this congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist." *Northwest Airlines, Inc. v. Transport Workers*, 451 U.S. 77, 94 (1981).

*Thompson v. Thompson*, 484 U.S. 174, 179 (1988) (emphasis in original). Thus, to ascertain whether legislative intent to create a private cause of action may be implied, the United States Supreme Court directs us to examine "the context, language, and legislative history" of the statute at issue. *Id*. at 180.

In the case at bar, the legislative history indicates the context of the Tip Statute: members of the General Assembly had become aware that, in some establishments, tips and gratuities that customers assumed would be given to their servers were in fact being either misdirected or even retained by the servers' employer. Clearly the legislature intended to require the targeted business establishments to distribute tips to the employees who provided the service to the customer who left the tip, with a governmental remedy in the form of fines. Later, the statute was amended to provide that a violation constituted a Class C misdemeanor. 1989 Tenn. Pub. Acts, ch. 591, § 113; *see* Tenn. Code Ann. §§ 40-35-110, -111. However, we find nothing in the "context, language, and legislative history" of the Tip Statute indicating one way or another whether the legislature envisioned individual employees filing suit under the statute to recover their unpaid tips, gratuities or service charges from their employers. *Thompson, 484 U.S.* at 180.

Finally, we consider the last *Brown* factor, whether implying a private remedy is consistent with the underlying purposes of the legislation. *See Brown*, 328 S.W.3d at 855-56. To do so, we review the *Brown* Court's consideration of this factor. As noted above, *Brown* involved the TTPA, a comprehensive Act aimed at regulating the title pledge lending industry. *Id*. at 859. In considering whether implying a private right of action was consistent with the underlying purpose of the legislation, *Brown* observed that the TTPA provided for criminal sanctions in the form of fines and penalties, as well as

administrative sanctions through suspension and revocation of an offending lender's license. *Id*.

*Brown* also recalled *Premium Finance*, in which the Court noted that the Premium Finance Company Act was designed to regulate the premium finance industry through "many of the same mechanisms used in the TTPA: requiring companies to be licensed, prescribing the contents of financial agreements, and setting interest rates." *Id*. at 860 (citing *Prem. Fin. Corp.*, 978 S.W.2d at 94). Like the TTPA, the enforcement mechanisms set forth in the Premium Finance Company Act were limited to criminal sanctions and administrative penalties. *Id. Brown* concluded that the TTPA was "a regulatory statute enforced through governmental remedies" and that "the implication of a private right of action would be inconsistent with the TTPA's purposes as set forth by the legislature." *Id*. at 861.

The statute at issue in this case, the Tip Statute, contains detailed directives on how the regulated businesses should distribute tips, gratuities and service charges. It also expressly provides that "[a] violation of this section is a Class C misdemeanor. Each failure to pay an employee constitutes a separate offense." Tenn. Code Ann. § 50-2-107(b). Following the analysis in *Brown*, without more, would lead to the conclusion that implying a private right of action for Ms. Hardy is not consistent with the apparent intent of the legislature to enforce the Tip Statute through governmental remedies.

In the Court of Appeals below, the majority held that Ms. Hardy had an implied private right of action under section 50-2-107 by relying in large part on *Owens v. University Club of Memphis*, No. 02A01-9705-CV-00103, 1998 WL 719516, at *11 (Tenn. Ct. App. Oct. 15, 1998), in which the intermediate appellate court held that the plaintiff food and beverage workers could pursue a private right of action under section 50-2-107. *Hardy*, 2015 WL 4042490, at *14. The court reasoned:

> [T]he General Assembly's decision not to overrule *Owens* . . . is compelling evidence of legislative intent on the issue. Accordingly, under the test set-forth by the United States Supreme Court in *Cort v. Ash* and applied by the Tennessee Supreme Court in *Brown*, the existence of a private right of action may be inferred in section 107.

*Id.*

On its face, *Owens* appears to be the proverbial "spotted cow" case. The plaintiffs in *Owens* were food and beverage servers at a private club, paid an hourly wage plus tips. *Owens*, 1998 WL 719516, at *1. When a private party was held, the club added a surcharge to its bill. *Id.* The plaintiffs alleged that the surcharge was a tip and that the

club illegally withheld a portion of the surcharge from the tipped employees, with "[p]art of the retained amount . . . recorded as income on the Club books, part . . . paid to management employees, [and] part . . . used to defray expenses and for other purposes." *Id.* The plaintiffs in *Owens* asserted, *inter alia*, that the practices of the defendant club violated the Tip Statute, section 50-2-107. *Id.* at *5. The club moved for a directed verdict, based in part on the argument that the plaintiffs did not have a private cause of action under the Tip Statute; the motion was denied. *Id.* at *5, *10. The jury found in favor of the plaintiffs and awarded significant compensatory damages. *Id.* at *5.

On appeal, the club in *Owens* argued *inter alia* that the trial court erred by refusing to dismiss the plaintiffs' claims under the Tip Statute. *Id.* at *10. Similar to the Defendants in the present case, the club asserted that section 50-2-107 is a criminal statute and that the plaintiffs had no private right of action under it. *Id.*

*Owens* predated this Court's decisions in both *Premium Finance* and *Brown*, so it considered the issue under the standard set forth in a prior Court of Appeals decision, *Buckner v. Carlton*, 623 S.W.2d 102 (Tenn. Ct. App. 1981), *superseded by statute on other grounds*, Act of May 24, 1984, ch. 972, 1984 Tenn. Pub. Acts 1026, *as recognized in Lucas v. State*, 141 S.W.3d 121, 129, 137 (Tenn. Ct. App. 2004). *Owens*, 1998 WL 719516, at *10-11. *Buckner* incorporated the first three factors enumerated in *Cort v. Ash,* namely, whether the plaintiff is one of the class for whose especial benefit the statute was enacted; whether there is any indication of legislative intent to either create or deny a private cause of action; and whether a private remedy is consistent with the underlying purposes of the legislation. *Buckner*, 623 S.W.2d at 105 (quoting *Cort v. Ash*, 422 U.S. 66, 78 (1975)).

*Owens* found that section 50-2-107 was intended to protect the rights of "service employees who receive tips as part of their compensation." *Owens*, 1998 WL 719516, at *11. With this purpose in mind, *Owens* evaluated the three *Cort v. Ash* factors:

> On its face, the Tennessee Tip Statute is clearly intended to protect such employees by forbidding employers from keeping their tips. While the statute contains no express indication of legislative intent to create or deny a private right of action, a private action is consistent with the purpose of the legislation, and indeed complements the remedy in the statute by providing a mechanism to make employees whole. Consequently, we affirm the trial court's determination that the plaintiffs could pursue a private cause of action under the Tennessee Tip Statute.

*Id.* Thus, applying the three *Cort v. Ash* factors, *Owens* held that the plaintiff food and beverage servers could assert a private right of action under the Tip Statute. *Id.* at *12.

Although *Owens* was decided prior to both *Premium Finance* and *Brown*, its analysis overlaps in part with the analytical framework in *Brown* insofar as both recite the three *Cort v. Ash* factors used to ascertain legislative intent regarding an implied private right of action.[16] By the time *Brown* was decided, however, the scales had tipped against recognizing a private right of action under a statute in the absence of "manifest" legislative intent to permit it, particularly where a statute includes express governmental mechanisms for enforcement. *See Premium Fin. Corp.*, 978 S.W.2d at 94 ("Where an act as a whole provides for governmental enforcement of its provisions, we will not casually engraft means of enforcement of one of those provisions unless such legislative intent is manifestly clear. We do not find such clear intention in the statute under review."); s*ee also Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 67 n.3 (2001) ("Since our decision in *Borak*, we have retreated from our previous willingness to imply a cause of action where Congress has not provided one")(citing *Alexander v. Sandoval*, 532 U.S. at 287, referring to *J.I. Case v. Borak*, 377 U.S. 426 (1964)(recognizing a private right of action in a federal statute)).

This increased reluctance to imply a private right of action becomes evident when comparing *Owens'* application of the third *Cort* factor (whether implication of a private remedy is consistent with the purpose of the legislation) with the application of the same factor in *Brown*. As noted above, in *Owens*, the Court of Appeals held that implication of a private remedy in the Tip Statute was "consistent with the purpose of the legislation, and indeed complements the remedy in the statute by providing a mechanism to make employees whole." *Owens*, 1998 WL 719516, at *11. In *Brown*, after noting that the TTPA contained criminal sanctions and administrative penalties for violation of its provisions, the Supreme Court held that the TTPA was intended to be enforced through governmental remedies and that implication of a private remedy would be "inconsistent" with its purposes. *Brown*, 328 S.W.3d at 861. Indeed, *Brown* took note of the fact that the *Owens* analysis of this factor differed, citing *Owens* in a footnote to its discussion of the third *Cort* factor with a "*but see*" signal and adding, "no Tenn. R. App. P. 11

---

[16] *Brown* recognized that the Court of Appeals in *Buckner* utilized the three factors that originated in *Cort v. Ash*:

> These factors originally appeared in the United States Supreme Court's opinion in *Cort v. Ash*, which set forth the standard for determining whether a private right of action is implicit in a federal statute. *Cort* also articulated a fourth factor—whether the cause of action is traditionally relegated to state law—which is inapplicable to the interpretation of state statutes and, therefore, omitted from the analysis. *Buckner* was the first Tennessee decision to analyze the three applicable *Cort* factors to determine whether a Tennessee statute implied a private right of action.

*Brown*, 328 S.W.3d at 855 n.4 (citations omitted).

application filed." *Id.* at 860 n.12 (citing *Owens*, 1998 WL 719516, at \*11). We must conclude that the reasoning in *Owens* is inconsistent with the jurisprudence regarding the implication of a private cause of action established in *Premium Finance* and *Brown*.

Ms. Hardy urges this Court to nevertheless be guided by *Owens*, because in the wake of the Court of Appeals' 1998 decision in *Owens*, Tennessee's legislature has chosen not to amend the Tip Statute to bar a private right of action. Ms. Hardy points out that the legislature in fact took up the Tip Statute in 2012 to amend by adding a new subsection excluding payments made by patrons at a guest ranch, and yet did not include an amendment barring a private remedy. Ms. Hardy also points out that the General Assembly amended Tennessee Code Annotated section 50-2-101 (requiring employers to inform employees in advance of the wages they will be paid for their labor) in 2013, deleting a sentence in subsection (b) that referred to civil litigation pursuant to the statute and adding a subsection stating that the statute would be enforced by the Tennessee Department of Labor and Workforce Development. *See* Tenn. Code Ann. § 50-2-101(b) and (d) (2014). Ms. Hardy notes that when the General Assembly amended section 50-2-101 to delete reference to a private remedy, it again chose not to expressly bar a private right of action under section 50-2-107.

As we have noted, in this case, the Court of Appeals relied in part on the fact that the General Assembly has not legislatively abrogated *Owens* in the years since it was decided. *Hardy*, 2015 WL 4042490, at \*14 ("[T]he General Assembly's decision not to overrule *Owens* . . . is compelling evidence of legislative intent on the issue."). We consider, then, whether to infer legislative acquiescence in *Owens* from the General Assembly's inaction.

This Court has stated, "[L]egislative inaction is generally irrelevant to the interpretation of existing statutes . . . ." *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 519 (Tenn. 2005). As pointed out by the dissent in the Court of Appeals below, the U.S. Supreme Court has commented that implying a private right of action on the basis of legislative inaction "is a hazardous enterprise, at best." *Hardy*, 2015 WL 4042490, at \*16 (Gibson, J. dissenting) (internal quotation marks omitted) (quoting *Touche Ross & Co. v. Redington*, 442 U.S. 560, 571 (1979)). Indeed, this Court has cautioned that, under some circumstances, it is

> "impossible to assert with any degree of assurance that [legislative] failure
> to act represents (1) approval of the status quo, as opposed to (2) inability
> to agree upon how to alter the status quo, (3) unawareness of the status quo,
> (4) indifference to the status quo, or even (5) political cowardice."

*Freeman Indus.*, 172 S.W.3d at 519 (alteration in original) (quoting *Johnson v. Transp. Agency Santa Clara Cnty, Cal.*, 480 U.S. 616, 672 (1987) (Scalia, J., dissenting)).

- 19 -

A limited exception to this overall principle can arise when the legislature's inaction follows judicial interpretation of a statute. As this Court has stated:

> The legislature is presumed to know the interpretation which courts make of its enactments; the fact that the legislature has not expressed disapproval of a judicial construction of a statute is persuasive evidence of legislative adoption of the judicial construction, especially where the law is amended in other particulars, or where the statute is reenacted without change in the part construed.

*Hamby v. McDaniel*, 559 S.W.2d 774, 776 (Tenn. 1977) (gathering cases).[17]

The doctrine of legislative inaction presumes that, had the legislature disagreed with a prior judicial construction of a statute, it would have amended the statute accordingly. It is not a rule of law; rather, it is a judicial principle that permits—but does not compel—a presumption of legislative acquiescence in a prior judicial interpretation of the statute.[18] It is more likely that courts will apply the doctrine if the statute in question is subsequently amended in other particulars. *See* 73 Am. Jur. 2d Statutes § 82. "[L]egislative action by amendment or appropriation of some parts of a law which has received a contemporaneous and practical construction may indicate approval of interpretations relating to the unchanged and unaffected parts." 2B Sutherland Statutory Construction § 49:9 (7th ed.).

The legislative inaction doctrine has been applied numerous times by this Court and by the Court of Appeals. *See, e.g.*, *Goodman v. HBD Indus., Inc.*, 208 S.W.3d 373, 379 (Tenn. 2006) ("[T]he Legislature has also expressed its tacit acceptance of the decision, in that it has chosen not to overrule it by statute.") (citing *Hamby*, 559 S.W.2d at 776); *Storey v. Nichols*, 27 S.W.3d 886, 889 (Tenn. 2000) ("Although Tenn. Code Ann. § 23-3-204 appears to provide for a direct appeal to the Supreme Court, the reenactment of § 23-3-204 . . . in the 1932 Code (and in subsequent codes) must be read in light of the courts' prior construction of the statute.") (citing *Hamby*, 559 S.W.2d at 776); *Evans v. Steelman*, 970 S.W.2d 431, 434 (Tenn. 1998) (reasoning that, "[a]fter the

---

[17] The holding in *Hamby* was abrogated on other grounds by Tennessee Code Annotated section 20-5-106(c). *See In re Benjamin M*., 310 S.W.3d 844, 849 (Tenn. Ct. App. 2009).

[18] But see *Hargrove v. Newsome*, 470 S.W.2d 348 (Tenn. 1971), in which the Court appears to refer to the doctrine of legislative inaction as giving rise to a "conclusive" presumption, and asserting that failing to adhere to the prior judicial decision after the legislature has amended the statute in a way that leaves the judicial interpretation intact "would, in effect, be amending the statute under the guise of judicial construction. This we should not do." *Id*. at 352.

*Cunningham* and *Cooper* decisions, the Legislature amended Tenn. Code Ann. § 36-2-202 in 1992 and 1994 [but] did not change the language 'not born in lawful wedlock' in either 1992 or 1994," which evidenced "an intent on the part of the Legislature to keep the scope of the legislation narrow") (citing *Hamby*, 559 S.W.2d at 774); *Jones v. D. Canale & Co.*, 652 S.W.2d 336, 337-38 (Tenn. 1983) ("The refusal of our Legislature to overrule or modify by statute the *Memphis Fertilizer* decision persuades us today that its intent has not changed within the past fifty-three years; the fact that the Legislature has not expressed disapproval of a prior judicial construction of its statute is persuasive evidence of legislative adoption of the construction.") (citing *Hamby*, 559 S.W.2d at 776); *State ex rel. Garrett v. City of Norris*, No. E2013-02355-COA-R3-CV, 2014 WL 4260848, at *10 (Tenn. Ct. App. Aug. 28, 2014) ("[W]e find the fact that Section 6-51-102(a)(1) has not been altered in the decades since the *Town of Bartlett* decision was rendered to be indicative of the Legislature's adoption of the interpretation made by the *Town of Bartlett* Court.") (citing *Hamby*, 559 S.W.2d at 776); *In re Estate of Burke*, No. M2012-01735-COA-R3CV, 2013 WL 2258045, at *5 (Tenn. Ct. App. May 21, 2013) ("The statute . . . was amended in other particulars effective in July of 2011. Our Legislature made no change to this statute which would [a]ffect the law as interpreted and analyzed in *In re: Estate of Boote*.").

At times, this Court has declined to presume legislative acquiescence even though the circumstances might support application of the doctrine. For example, the Court decided not to apply the doctrine of legislative inaction where the prior judicial interpretation had only an attenuated connection with the state statute at issue. *See Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 519 (Tenn. 2005) (acknowledging principle articulated in *Hamby* but distinguishing it) ("The present case, however, involves the Tennessee legislature's failure to amend a state statute in response to a federal court's interpretation of a federal statute."). We have also declined to apply the legislative inaction doctrine where the prior judicial construction of the statute was contrary to the clear and unambiguous meaning of the statutory language. *See Lanier v. Rains*, 229 S.W.3d 656, 666 (Tenn. 2007) (declining to adhere to the interpretation of the statutory term "born" adopted in *Rose v. Stalcup*, No. 140, 1988 WL 69501, at *1 (Tenn. Ct. App. July 8, 1988)) ("To hold otherwise would defy the clear and unambiguous meaning of the term. . . ."). This is in line with how other states have applied the doctrine. *See, e.g.*, *Blount v. Stroud*, 904 N.E.2d 1, 15 (Ill. 2009) (citation omitted) ("[W]here the meaning of the statute is unambiguous, we will give little weight to the fact that the legislature did not amend the statute after appellate opinions interpreting the same.").

Tennessee's legislature has recognized and implicitly acquiesced in application of the doctrine of legislative inaction under limited circumstances. As noted above, Tennessee Code Annotated section 1-3-119 (a)-(b) provides that legislation must contain

express language to create or confer a private right of action under a statute, and that no court may construe a statute to impliedly create a private right of action in the absence of such language. Tenn. Code Ann. § 1-3-119 (a) and (b) (2014). However, the legislature added the following proviso:

> Nothing in this section shall be construed in any way to impair the ability of a court to: (1) Recognize a private right of action that was recognized before July 1, 2012, by the courts of this state as arising under a statute, unless the statute is amended after July 1, 2012, to expressly bar the private right of action.

Tenn. Code Ann. § 1-3-119(c)(1). Thus, after substantially prohibiting courts from implying a private right of action under a statute, the legislature carved out circumstances in which a court (prior to the effective date of the statute) has recognized such a private right of action, essentially "grandfathering in" such prior judicial decisions.

Against that backdrop, we consider whether to apply the legislative inaction doctrine under the facts of this case. Here, *Owens* construed the state statute at issue in this case, the Tip Statute, and addressed the question presented in this case, whether a food and beverage server has a private right of action under the statute. In 2012, the legislature amended the Tip Statute to add a subsection excluding payments made by patrons at a guest ranch, and did not include an amendment barring a private remedy. 2012 Tennessee Laws Pub. Acts, ch. 895, § 1. (H.B. 2671). Under *Hamby*, then, this set of circumstances may give rise to an inference that the legislature knew of the Court of Appeals' interpretation of the Tip Statute in *Owens* but, by amending the law in other particulars without expressing disapproval of the judicial construction of the statute, legislatively acquiesced in the judicial construction. *Hamby*, 559 S.W.2d at 776.

However, as we noted above, the reasoning in *Owens* is inconsistent with the jurisprudence regarding the implication of a private cause of action established in *Premium Finance* and *Brown*. *Owens*' reasoning reflects a willingness to imply a private remedy so long as doing so is not inconsistent with either the purpose of the statute or any criminal or administrative remedies expressly provided in the statute. Since Owens was decided, courts in Tennessee and elsewhere have "retreated" from this approach in favor of one that generally presumes that the legislature will expressly provide for a private remedy if it intends there to be one. *See Corr. Servs. Corp.*, 534 U.S. at 67 n.3 ("[W]e have retreated from our previous willingness to imply a cause of action where Congress has not provided one."). *Brown* specifically noted that the analysis in *Owens* differed from its analysis in this regard. *Brown*, 328 S.W.3d at 860 n.12 (citing *Owens*, 1998 WL 719516, at *11).

- 22 -

As we have emphasized, the doctrine of legislative inaction is *not* a rule of law; it permits but does not compel a presumption of legislative acquiescence in a prior judicial interpretation of a statute. In this case, because the *Owens* analysis is inconsistent in part with this Court's analysis in *Brown* and *Premium Finance*, we decline to apply the legislative inaction doctrine to presume that the legislature knew of the Court of Appeals' interpretation of the Tip Statute in *Owens* and acquiesced in it. We hold instead that Ms. Hardy has no private right of action under the Tip Statute. We expressly overrule *Owens* to the extent that it is inconsistent with this holding. On this basis, we reverse the holding of the Court of Appeals and affirm the trial court's dismissal of Ms. Hardy's claim under section 50-2-107.

## CONCLUSION

We find that the Court of Appeals' reasoning in *Owens v. University Club of Memphis* is inconsistent in part with the analysis in this Court's subsequent decisions in *Brown* and *Premium Finance*. *Owens*, 1998 WL 719516, at *10-11; *Brown*, 328 S.W.3d at at 860; *Premium Fin.*, 978 S.W.2d at 94. For this reason, we decline to apply the doctrine of legislative inaction to presume that the legislature knew of the Court of Appeals' holding in *Owens*, recognizing a private right of action under the Tip Statute, and acquiesced in it. We hold instead that Ms. Hardy has no private right of action under section 50-2-107 and overrule *Owens* to the extent that it is inconsistent with our holding herein.

Accordingly, we reverse the judgment of the Court of Appeals and affirm the trial court's judgment granting Defendant's motion to dismiss Plaintiffs' cause of action under section 50-2-107 for failure to state a claim. We remand this case to the trial court for further proceedings consistent with this Opinion. Costs of this appeal are assessed to the Plaintiff Kim Hardy and her surety, for which execution may issue, if necessary.

_____
HOLLY KIRBY, JUSTICE